### McNAMEE & CO. v. HUCKABEE.

1. After the settlement of the "Case" by the Circuit judge, leave was given by this court to appellant to file additional exceptions to the charge of the judge as settled by him.

2. On the submission of a "Case" to the Circuit judge for settlement, he corrected his charge in particulars as to which no amendments had been proposed. *Held*, that no appeal lay from such settlement.

3. A deed executed in 1857, but not recorded until December 7th, 1877, has priority over a deed to the same land executed in September, 1877, but not recorded until December 20th, 1877—more than forty days after its execution. *Steele* v. *Mansell*, 6 *Rich.* 437, approved.

4. The act of 1876 (16 *Stat.* 92) applied only to deeds executed after January 1st, 1877, and, therefore, by its repeal of all acts inconsistent with it, did not repeal the registry acts then of force so far as they provided for registration of deeds executed prior to 1877.

5. Deeds executed under the registry act of 1876 and not recorded within forty days, are valid as against subsequent purchasers and creditors for valuable consideration without notice only from the date of record.

6. The registry of deeds, which were recorded between December 14th, 1876, and May 1st, 1882, without the indorsement of the county auditor, was legalized by section 1778 of the general statutes.

7. The general statutes of 1882 was not a mere compilation of pre-existing acts and joint resolutions, but a statute having the force of law as such from the time it went into operation.

Before ALDRICH, J., Aiken, September, 1882.

The opinion fully states the case.

*Messrs. Henderson Bros.*, for appellant.

*Messrs. Croft & Dunlap* and *W. T. Gary*, contra.

November 22d, 1883.    The opinion of the court was delivered by

MR. JUSTICE McGOWAN. This action was commenced March 11th, 1878, to recover possession of twenty acres of land having upon it deposits of kaoline clay. Within the lines of the tract there is a small parcel of an acre and a half which was not claimed.

The question was one of title. Both parties claimed under one Edmund Morris. The plaintiffs' claim was as follows: (1) Deed from Edmund Morris to the Southern Porcelain Manufacturing Company, bearing date May 27th, 1857. This deed was not recorded until December 7th, 1877, and then without any indorsement of the auditor of the county upon it. (2) Judgment of Harrison, assignee, against the Porcelain Manufacturing Company, lodged in Aiken county, September 10th, 1877, and also that of H. W. & J. L. Addison against the same, October 4th, 1877. Under these judgments the land was levied December 11th, 1877, and sold by the sheriff of Aiken county

as the property of the said company on salesday of January, 1878, and bid off by the plaintiffs, to whom the sheriff executed a deed January 17th, 1878, which was recorded the next day.

The defendant Huckabee put in evidence a quit-claim deed for the premises from the said Edmund Morris, bearing date September 1st, 1877, which was recorded the first time, December 20th, 1877, without having the indorsement of the auditor upon it, and on the day of the trial of this case, September 21st, 1882 it was registered in the auditor's office and recorded again. The defendant Sharpton had himself made a party after the action had been commenced against Huckabee, and set up title to the premises under the statute of limitations; but he does not appeal, and it is not necessary to state particularly the nature of his claim.

The case came on for trial before Judge Aldrich and a jury. Besides the paper title of the parties above stated, it appeared that the defendant Huckabee had purchased the little parcel of an acre and a half, embraced within the lines of the twenty acres, from one Cliffe or his heirs, and his working it within the twenty acres, excited the attention of the officers of the Porcelain Company, and led to explanations. Schaub testified that, as superintendent of the company, he had, in 1875, "a conversation with defendant (Huckabee); said I understand you are digging on land of the company. He said he was not on the twenty acres, but on one and a half acres excepted; he was working on that parcel; but Huckabee was working on the twenty acres in the month of January, 1878." This witness also testified that he was superintendent of the Southern Porcelain Manufacturing Company for ten years, from 1867 to 1876; several times examined the twenty acres, which was seven or eight miles from the works of the company; bored for clay there in 1868; he got the deed from Morris and kept it in his desk until it was recorded; and never turned it over to Davies after he was elected president.

In the spring of 1877, Huckabee, by appointment, met Mr. Davies, the president, in Augusta, and proposed to refer the matter of title to Mr. Jenkins. On that occasion President Davies said that "the secretary, Schaub, had informed him that Huckabee was on the land of the company; but he had investi-

gated, and finding no record he thought the company did not own the twenty acres." Davies had been elected president a short time before, and had not seen the papers, which, as before stated, were in possession of the secretary.

In August, 1877, John M. Cook, a civil engineer, was sent by the president to locate the land, who, taking with him Bauknight, the then superintendent of the company, went upon the land and informed Huckabee that they had come to make a survey of the twenty acres for the Porcelain Company. "Dr. Huckabee asked if they had any papers to make such survey by; and upon our saying no, Dr. H. (the defendant) refused to allow the survey to be made as a matter of business." It seems that soon after this incident, Huckabee went to Georgia, where Morris lived, and obtained from him for $40 the quit-claim deed above mentioned, of date September 1st, 1877. It also appeared that when the land was sold under the judgments against the Porcelain Company, and bought by the plaintiffs, in January, 1878, the defendant Huckabee caused public notice to be given that "he had a title to the twenty acres."

The plaintiffs presented a number of requests to charge, some of which were charged, and others refused or charged with modifications. Under the charge the jury found "for the defendant Huckabee the land in dispute." The plaintiffs appealed; but the parties, not being able to agree as to what was the charge, referred it to the judge to settle some particular point, and he reported his charge in full, embracing points upon which there had been no disagreement, as well as those specially referred to him. After the report of the charge, this court gave the appellants leave to file additional exceptions, made necessary, as was alleged, by the authentic charge as reported by the judge himself.

First. The plaintiffs' first request to charge was as follows: "That the deed from Morris to the Southern Porcelain Company [covering the land in dispute] being older than, and having been recorded before the deed from Morris to Huckabee, though recorded after the date of said last deed, takes priority in law over the same, which was recorded after the statutory time; and,

N

thence, that the plaintiffs have a better title to the said land than the defendant Huckabee, and must recover as against him." The judge charged : " This is good law if the deed to the company was recorded ; but that is the very question of law submitted. Was it recorded ? The requisites of the law were not complied with, and although the paper may have been placed in the record book, it is no record unless the prerequisites have been observed."

Second. The plaintiffs' second request to charge was " that the judgments under which Sheriff Holley sold the land in dispute to the plaintiffs, having become liens upon the said land before the deed of Morris to Huckabee was recorded, no subsequent *laches* of the Porcelain Company could defeat the lien of said judgments ; and said sale transferred a title to the plaintiffs paramount to the title of the defendant Huckabee." The judge charged : "Admit this to be so ; then the question for you is, Did the purchaser have notice of Huckabee's claim on the day of sale through Mr. Jordan ? This becomes important in considering the question of notice. In addition, if the company's deed was not recorded, then there was no lien. If the deed of the company is not genuine, that is an end of the case. Did President Davies, by word or deed, induce or encourage the defendant to buy ? If he did, defendant's title cannot now be disputed. Was the keeping of the deed so long from the record a fraud on the defendant ?"

The plaintiffs' exceptions to the charge as settled, were : " 1. That his Honor erred in modifying the first request to charge preferred by the plaintiffs by adding thereto. [See statement of charge, *ante.*] 2. That his Honor erred in modifying the second request preferred by plaintiffs by adding thereto, &c. [See statement of charge, *ante.*] 3. That his Honor erred in submitting to the jury this question : 'Was the keeping of the deed so long from the recording office a fraud on the defendant ? ' whereas, it is submitted that the non-recording of the deed cannot be termed fraud under the circumstances of this case. 4. That his Honor erred in settling his charge in this, that though the attorneys admitted that his Honor charged the plaintiffs' first request without qualification as stated in the

settlement, and refused to charge their second request *in toto*, yet his Honor, in settling the case, settles the same differently; whereas, said questions were not submitted to him for settlement."

In reference to the last ground of appeal, we need only say that we know of no authority for an appeal from the settlement of a case by the judge who heard it. The alleged error is certainly not one of law, of which we have cognizance. There must be some final arbiter, and an end of controversy. The judge who heard the cause must be supposed to know better than any one else what he charged. Rule 47 of the Circuit Court prescribes the manner in which a case shall be settled. The appellant must propose a case or exceptions, and serve a copy upon the opposite party. "And the party served may, within ten days thereafter, propose amendments thereto and serve a copy upon the party proposing the case, who may then, within four days thereafter, serve the opposite party with a notice that the case or exceptions with the proposed amendments will be submitted at a time and place to be specified in the notice to the judge or referee before whom the case was tried for settlement. The judge or referee shall thereupon correct and settle the case as he shall deem to consist with the truth of the facts." *Shand's Manual* 75.

These words would seem to give a more absolute discretion to the judge than is given by those in the corresponding rule (41) of the New York courts, which are as follows: "The judge or referee shall thereupon correct and settle the case according to the facts." And yet it has been held in that State that "a judge has the right to see that his charge, so far as it is necessary to be inserted in a case, is correctly presented, even though the parties have agreed upon it." *Root* v. *King*, 6 *Cow.* 569; *Wait Anno. Code* 842. We can only consider the charge as reported by the judge himself in settling the case.

As to the modification of the first request to charge. There is no subject upon which our law has been more confused and obscure than that of registry, both as to the effect of omission to record and of recording within the time as well as after the time prescribed by law. See the case of *Steele* v. *Mansell*, decided in

the late Court of Errors by all the judges and chancellors of the State, 6 *Rich.* 437. As we understand it, that case finally settled that the old colonial registry act of 1698 and the forty-fifth section of the county court act of 1785 must be construed together, and that their joint operation produced three results : First. That a deed of land never recorded was not thereby absolutely void ; but as between the parties was still good. Second. That if registered within the time prescribed by law, the registry had reference back to the date of the deed which took effect from its date ; and, Third. That if registered after the time prescribed by law, it did not have reference back to the date of the deed, but took effect and was notice to all the world only from the date of its actual registry. See *Barnwell* v. *Porteous,* 2 *Hill Ch.* 219 ; *Leger* v. *Doyle,* 11 *Rich.* 118 ; *Belk* v. *Massey, Ib.* 618 ; *Youngblood* v. *Keadle,* 1 *Strobh.* 121.

It is true that the act of 1843, " To amend the law in relation to recording mortgages," &c., contained no provision as to the effect of recording after the time required by law, but left absolute and unqualified the general enactment " That no mortgage of real estate shall be valid so as to affect the rights of subsequent creditors or purchasers for valuable consideration without notice, unless the same shall be recorded in the office of register mesne conveyances of the district wherein such real estate lies, within sixty days from the execution thereof." 11 *Stat.* 256. As might have been expected this act has received interpretation in accordance with its terms, making no provision for the registry after the time prescribed. See *McKnight* v. *Gordon,* 13 *Rich. Eq.* 223 ; *Williams* v. *Beard,* 1 *S. C.* 322. Both of these were cases of mortgages. In the first the property was personalty and in the latter real estate. In that of *McKnight* v. *Gordon,* Justice Inglis pronounced a very full and carefully considered opinion, in the course of which he said : " But the positive rule of law established by this statute precludes the mortgagee, who has omitted to put his mortgage on record within the time limited, from interposing the estate which he acquired by it, in bar or derogation of the estate or claim for which one who is within the terms of its protection has paid."

But neither the act of 1843, nor its interpretation applies to

this case, which is in reference to absolute conveyances. That act dealt with the registration of mortgages only, and as we suppose is now absorbed into and repealed by the general registration act, passed December, 1876, of which we will speak hereafter. The case of *Steele* v. *Mansell* and those following it, cited above, were all in reference to absolute conveyances of land decided after the passage of the act of 1843, and with full knowledge of it. In delivering the judgment of the Court of Errors in *Steele* v. *Mansell*, Judge Wardlaw said: "Our registry law, before the act of 1843 concerning mortgages, was lamentably obscure and deficient, and that act has afforded no remedy in respect to absolute conveyances."

Taking then the law as to absolute conveyances to be as settled by *Steele* v. *Mansell*, and the other cases following it down to 1858, let us apply it to the paper title in this case, without at present any reference to the mutual allegations of actual notice.

The deed of Morris to the Porcelain Company was the oldest, having been executed in 1857, while that to Huckabee was not executed until 1877. The first was good against Morris without recording, but, as it was not recorded within the time limited, its operation as to third parties was in abeyance until registry, which was December 7th, 1877. But before that time, September 1st, 1877, Huckabee procured his deed from Morris, and if he had recorded it within the time limited (which was then forty days under act of 1876) he would have acquired priority over the deed of the company. It so happened, however, that he also was in default, and did not record his deed until December 20th, 1877, after the time limited by law; and applying the same rule to this deed, that was applied to the other, giving each vitality from its registry, the deed to the company had priority by thirteen days, this being recorded on the 7th and that on the 20th of December, execution of the second deed before the registry of the first, and recording after and out of time, being equivalent to execution after the first and recording within time as in *Steele* v. *Mansell*.

The exact point here ruled has never, so far as we know, arisen in the State before, but it seems to us to follow from the principles settled. The case of *Steele* v. *Mansell* differs from this

only in one particular; in that the second deed was executed after the first had been recorded, while in this it was made before, but not recorded until after and also after the time limited. The case which comes nearest to this, is that of *Leger* v. *Doyle, supra.* In that case the second deed was executed after the first deed was recorded, as in *Steele* v. *Mansell,* but the second deed was that of a sheriff under a sale which was made before the first deed was recorded. That comes very nearly to this case, and in delivering the judgment of the court Judge Wardlaw made a remark *arguendo,* which covers this case precisely. He said: "If the plaintiff (junior) had paid her bid, by giving her receipt to the sheriff or otherwise, and had taken the conveyance from him on the day of sale (before first deed was recorded), she could not have been hurt by the registration within six months thereafter, of any conveyance not executed within six months next preceding, provided the conveyance to herself had been duly recorded within six months." This was doubtless upon the principle announced by Judge Evans in the case of *Barnwell* v. *Porteous, supra,* as follows: "It is manifest that neither the plaintiff nor Rose has complied with the act of 1785, and but for the act of 1698, the unrecorded mortgage (senior) would take precedent of Rose's deed (junior); but as Rose has recorded his deed he has acquired a preference in pursuance of the act of 1698, * * * by which 'that sale, conveyance or mortgage of lands which shall be first recorded in the register's office,' &c., shall be taken, deemed, adjudged, allowed of and held to be the first sale, conveyance or mortgage, and be good, firm and substantial in all courts of judicature within South Carolina," &c.

The Circuit judge took this view, which was embodied in the first request to charge, but he made a modification. He said when the first request was read, "this is good law, if the deed to the company was recorded. But that is the very question of law submitted. Was it recorded? The requisites of the law are not complied with, and although the paper may have been placed in the record book, it is no record unless the prerequisites have been observed." Was this error? The question is, Was there wanting any indispensable prerequisite when the deed to the company was placed in the record book, on December 7th, 1877? It does

not clearly appear to what prerequisites reference was made by the judge. There is no doubt that the deed was not recorded within the time prescribed by law, but, as we have seen, that was not necessary to its validity from the date of registry. We hear nothing of any lack of proof as to its execution or probate.

It was, however, insisted at the bar that the deed was not legally admitted to record for the want of two prerequisites: First. That at the time it was spread upon the books of record, there was in force no law that authorized its registry; that the whole law of registration had been changed by the act of 1876, 16 *Stat.* 92, (re-enacted as section 1776 of the new general statutes,) which repealed all former laws upon the subject of registration. The view seems to be, that the act of 1876 does not provide for the registry of any deed in existence at the time it was passed, and yet repeals all other laws upon the subject, leaving the recording of such deeds entirely unprovided for. We cannot adopt this construction. The act of 1876, so far as it touches the point in question, is as follows: "That all deeds of land delivered or executed on and after January 1st, 1877, shall be valid so as to affect from the time of such delivery or execution the right of subsequent creditors or purchasers for valuable consideration without notice, only when recorded within forty days from the time of such delivery or execution," and went on to declare, "that all acts and parts of acts inconsistent with this act be and the same are hereby repealed."

This act, by its very terms, only relates to the registry of deeds executed after January, 1877, and as the deed to the Porcelain Company was executed long before that time, it is clear that its registry was not provided for by the act; but it is not at all clear that the act repealed generally all other laws on the subject. On the contrary, the repeal was expressly limited to such as were "inconsistent with it." The laws then in force providing for the registry of deeds executed before January, 1877, were not inconsistent with it, but by its very terms were outside of it, and therefore not repealed by it. There is nothing in the act of 1876 which made the registry in 1877 of the deed to the company executed in 1857 illegal and void. We may say in passing, however, that the deed from Morris to Huckabee,

having been executed after January 1st, 1877, did fall within the provisions of the act of 1876, and the proviso thereof, which, in harmony with the principles announced in *Steele* v. *Mansell*, provides "that the above-mentioned deeds or instruments of writing, if recorded subsequent to the expiration of the said forty days, shall be valid, to affect the rights of subsequent creditors and purchasers for valuable consideration without notice, only from the date of such record," &c.

Second. But it is further contended that the deed to the company was placed in the record by the register in violation of this duty, because he did so before requiring the indorsement of the county auditor upon it, and therefore the registry was without authority and void. It is true, that at the time of the registry (1877), there was in the auditor's act a provision in these words, "And provided further, that each county auditor shall keep a record of all sales or conveyances of real property made in his county, in which he shall enter, in columns, the names of the purchaser and seller, the quantity of land conveyed, the location and price of the same, and therefrom correct the county duplicates annually; and, for the purpose of carrying out this provision, the clerks of court, &c., are required to have the indorsements of the county auditor on each and every deed of conveyance for real property that the same is on record in his office, before the same can be placed on record in the office of said clerk of court or register of mesne conveyances." There may be some doubt whether this provision was intended to embrace the registry of deeds executed before but recorded after its adoption; but, passing this, it is suggested that, rightly construed, it did not create a new and indispensable prerequisite to recording, so as to make registry without the auditor's indorsement absolutely void, but was rather directory—like the act of 1799, directing jury lists to be made out from the tax returns once in every three years, in reference to which it was held that the requirement was purely directory to public officers in the discharge of their duty; and if the requirement was disregarded and the act was nevertheless done, such act was not thereby rendered void. *State* v. *Massey*, 2 *Hill* 379.

It is further urged that, as the provision does not appear in

the act upon the subject of recording, but in that prescribing the duties of the county auditor, the manifest purpose of it, as the provision itself declares, was merely to assist the auditor in getting property correctly on the lists for the purposes of taxation. The argument is not without some force. The indorsement of the auditor has, so far as we can see, no connection with or effect upon the registry itself. But this is a new question, and as we do not think it necessarily involved in the decision of the case, we make no ruling upon it.

We find in the General Statutes, § 1778, among the requirements as to registry, another provision in these words: "All conveyances of real estate which have been recorded by the clerks of court and registers of mesne conveyances of the several counties since the fourteenth day of December, 1876, without the indorsement of the auditor of the county, are hereby declared to be as valid and binding, to all intents and purposes, as if the said conveyance had been indorsed by the auditor of the county thereon." This provision, as it reads, clearly dispenses with the necessity of the auditor's indorsement and legalizes the registry of all deeds without such indorsements, during the period from December 14th, 1876, to May 1st, 1882, when the general statutes went into operation; and that period includes the time of the registration of the deed to the company as well as of that to Huckabee.

It is, however, objected to this view, that the general statutes are only a codification of acts and joint resolutions previously passed; that the provision under consideration was only in another form the joint resolution upon the same subject previously passed by the legislature and approved June 9th, 1877, (16 *Stat.* 321,) and that therefore it must be construed, in respect to time, as if it had been passed at the date of the resolution (1877), and so construed does not cover the registry of deeds after June of that year. We do not feel authorized to make any such limitation as to time. The general statutes are more than a mere compilation of previous laws. They were passed by the legislature and approved by the governor in accordance with the requirements of the constitution as to the enactment of laws, and have the force of law then enacted. We can neither repeal

nor amend the provision nor fix a day for its operation different, from that on which it became law. Its terms make no reference to the joint resolution or the date of its passage, but are general, and, speaking from the day the general statutes went into operation, cover the whole period back to " since 1876," the time indicated. We do not think that the registry of the deed from Morris to the Porcelain Company in December, 1877, was made void by the absence of the indorsement upon it of the county auditor for the time being.

The result is, no prerequisite to registry being wanting, that the paper record of the parties indicates priorities as follows : (1.) Judgment of Harrison, assignee, against the Southern Porcelain Manufacturing Company, September 10th, 1877. (2.) Deed of the said company from Morris, December 7th, 1877. (3.) Deed of Huckabee from Morris, December 20th, 1877. And (4.) Deed of the sheriff to the plaintiffs, R. McNamee, &c., purchasers under judgment of Harrison, assignee, and others, January 17th, 1878.

The case must go back for a new trial, and, as the point ruled will necessarily affect more or less the other questions in the case, we think it better that they should not be discussed at this time. Both parties should have an opportunity to have them considered without prejudice in reference to the conclusions herein announced.

The judgment of this court is that the judgment of the Circuit Court be set aside and the case remanded for a new trial.